UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COLLEEN BAILEY,

                              Plaintiff,

                     v.                                    1:15-CV-375
                                                                (FJS/DJS)

REGIONAL RADIO GROUP LLC,
and CLAY ASHWORTH,

                              Defendants.
_____

**APPEARANCES**                                      **OF COUNSEL**

**RAISER & KENNIFF, P.C.**            **ANTHONY J. COLLELUORI, ESQ.**
300 Old Country Road
Suite 351
Mineola, New York 11501
Attorneys for Plaintiff

**THE MURRAY LAW FIRM, PLLC**     **JOSEPH C. BERGER, ESQ.**
10 Maxwell Drive
Suite 100
Clifton Park, New York 12065
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Defendants' motion for summary judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See generally* Dkt. No. 33.

## II. BACKGROUND

Plaintiff Colleen Bailey and Defendant Clay Ashworth first met while working together at Adirondack Broadcasting in 2003. *See* Dkt. No. 34-1 at ¶ 3. Defendant Ashworth was the General Manager, and Plaintiff was a salesperson at that time. *See id.* In 2006, Defendant Ashworth left Adirondack Broadcasting to purchase Defendant Regional Radio Group, LLC. *See id.* at ¶ 4.

In 2009, Plaintiff reached out to Defendant Ashworth and asked for a job at Defendant Regional Radio Group, LLC. *See id.* at ¶ 5. Defendant Ashworth hired Plaintiff as the General Sales Manager and put her in charge of a five-person sales force. *See id.* at ¶ 6. Plaintiff was employed at Defendant Regional Radio Group until September 15, 2013, when she submitted her resignation. *See id.* at ¶ 8. Plaintiff's resignation letter was addressed to Defendant Ashworth and stated, in pertinent part, that she had

> decided it is time for me to leave Regional Radio. . . . I wasn't living up to your expectations. You have decided to do what is best for your family with seeking an assistant GM and selling the stations in the near future, and my fate would be sealed with a new owner as you discussed in a recent sales meeting, so I have decided to just leave now.

*See* Dkt. No. 33-3 at 2.

Plaintiff filed this lawsuit on March 30, 2015, asserting four causes of action. *See* Dkt. No. 1. First, Plaintiff alleges that Defendant Regional Radio Group, LLC discriminated against her on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") by creating a hostile work environment and treating her differently than male employees. *See id.* at ¶¶ 37-47. Second, Plaintiff asserts that Defendant Regional Radio Group, LLC retaliated against her in violation of Title VII. *See id.* at ¶¶ 48-54. Third, Plaintiff claims that Defendants Ashworth and Regional Radio Group, LLC violated New York Humans Rights Law,

N.Y. Exec. Law § 296(7) ("NYHRL").  *See id*. at ¶¶ 55-56.  Finally, Plaintiff contends that Defendant Regional Radio Group, LLC violated the Family Medical Leave Act ("FMLA") by refusing to grant her time off due to the "imminent death of her boyfriend's father."  *See id*. at ¶¶ 57-62.

## III. DISCUSSION

**A.     Standard of review**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials "demonstrate the absence of genuine issues of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law" and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the movant meets this burden, the nonmoving party must ""set forth specific facts showing a genuine issue for trial.""  *Id*. (quotation omitted)  "[I]n ruling on a motion for summary judgment, the district court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments[.]"  *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (citations omitted).  However, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a

motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing [*Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) (*per curiam*)]).

**B.     Plaintiff's Title VII and NYHRL claims[1]**

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e–2(a)(1).  Similarly, the NYHRL provides, in pertinent part, that "[i]t shall be an unlawful discriminatory practice . . . for an employer . . . because of an individual's . . . sex . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. L. § 296(1)(a).  The same standard of proof applies to both Title VII and NYHRL discrimination claims.  *See Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008) (citations omitted); *Pucino v. Verizon Wireless Comm'cns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010) (citation omitted).

*1. Disparate treatment*

To establish a prima facie claim of sexual discrimination a plaintiff "must show: (1) that [s]he belonged to a protected class; (2) that [s]he was qualified for the position [s]he held; (3) that [s]he suffered an adverse employment action; and (4) that the adverse employment action

---

[1] Plaintiff's only claim against Defendant Ashworth is under the NYHRL, which, unlike Title VII, allows suits against individual employees who have an ownership interest in the business. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (quotation omitted); *see also E.E.O.C. v. Suffolk Laundry Servs., Inc.*, 48 F. Supp. 3d 497, 523 (E.D.N.Y. 2014) (stating that "[t]he NYSHRL allows for individual liability under two theories: 'if the defendant has an ownership interest' in the employer or 'has the authority to hire and fire employees'" (quotation and footnote omitted)).

occurred under circumstances giving rise to an inference of discriminatory intent."[2] *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (citation omitted). The parties do not dispute the first two elements; rather, Defendants' arguments focus on whether Plaintiff suffered an adverse employment action and, if so, whether any such employment action was taken due to her gender.

"A disparate treatment claim requires a showing of an adverse employment action . . . 'because of gender. . . .'" *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quotation omitted). "'A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. . . . An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Joseph*, 465 F.3d at 90). Examples of adverse employment actions include "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Sanders v. N.Y. City Human Res. Admin.,* 361 F.3d 749, 755 (2d Cir. 2004) (quotation omitted). Importantly, "there must be a link between the discrimination and some 'tangible job benefits' such as 'compensation, terms, conditions or privileges' of employment." *Alfano*, 294 F.3d at 373 (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 778 (2d Cir. 1994)).

---

[2] As the parties point out, once the plaintiff has established a *prima facie* case, the burden shifts to the defendant, who must offer a legitimate, non-discriminatory rationale for its actions. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant has made a showing of a neutral reason for the complained-of action, "to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trustees of Columbia Univ. in City of N.Y.*, 131 F.3d 305, 312 (2d Cir. 1997) (citations omitted).

Plaintiff generally alleges that Defendant Ashworth discriminated against and harassed her and other female workers. Specifically, Plaintiff alleges that (1) there was a running "joke" in the office that there was a 120-pound weight limit for female employees, *see* Dkt. No. 35 at 4; (2) there was a different dress code for female employees, *see id.*; (3) Defendant Ashworth would scream and curse at Plaintiff, *see id.* at 5; (4) women were disciplined more severely, *see id.* at 6; (5) Plaintiff was discriminated against in how her bonus was calculated; *see id*. at 7; (6) women were not given company cars, *see id.* at 8; and (7) her complaints regarding sexual harassment were ignored, *see id*. at 8-9. Ultimately, Plaintiff contends that she was forced to resign because of Defendant Ashworth's behavior. *See id*. at 9.

The majority of Plaintiff's allegations fail to establish that she experienced any material change to the terms and conditions of her employment; rather, the evidence suggests that her benefits and responsibilities remained the same. The 120-pound weight-limit joke, dress code, screaming, disparity in discipline, and company car allegations[3] all fail to allege any material change in the conditions of Plaintiff's employment; and, therefore, they cannot form the basis of a Title VII discrimination claim. *See e.g., Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 222 (E.D.N.Y. 2014) (stating that "[p]laintiff's allegation that he adhered to a dress code while others did not amounts to nothing more than a complaint regarding a mere inconvenience, not an adverse employment action" (citation omitted)); *Meder v. City of N.Y.*, No. 05 CV 919, 2007 WL 1231626, *4 (E.D.N.Y. Apr. 27, 2007) (holding that "written and oral criticisms . . ., even if

---

[3] Even if Plaintiff not having a company car could be considered an adverse employment action, Plaintiff's claim fails. Defendants set out legitimate, non-discriminatory reasons for men having cars, namely that they had pre-existing deals set-up with car dealerships from the previous owner. Furthermore, Plaintiff's claim unravels when she admits that Defendant Ashworth offered her a car, but she refused because she wanted to drive a Mustang rather than a Taurus. *See* Dkt. No. 33-9 at 129:18-130:2.

unjustified, are not adverse employment actions"); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) (holding that excessive scrutiny by supervisors does not constitute an adverse employment action under Title VII (citations omitted)).

Plaintiff's only allegations that merit further discussion as potential adverse employment actions include her claim regarding the calculation of her bonus and her allegedly forced resignation. Plaintiff claims that Defendant Ashworth set her budgets "in such a way that [she] could not meet her sales goals, as compared to how he calculated men's bonuses." *See* Dkt. No. 35 at 7. For support, Plaintiff cites several excerpts from deposition testimony that demonstrate that her commission was based on the budget that Defendant Ashworth, as general manager, set and that everyone had different budgets. *See id*. Plaintiff's allegations in this regard lack specifics, and there is no evidence in the record to support her allegations beyond her own inconclusive testimony.

However, even assuming that there was a difference in the calculation of bonuses for female and male salespeople, Plaintiff "must show that she was treated differently from 'similarly situated' males" to establish an inference of gender-based discrimination. *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). "To be 'similarly situated,' the individuals with whom [Plaintiff] attempts to compare herself must be similarly situated in all material respects." *Id*. (quoting *Mitchell*, 964 F.2d at 583). Plaintiff only alleges that one male employee, Pete Cloutiere, received a higher salary than she did; and her own deposition testimony clearly shows that Mr. Cloutiere had a materially different job than she did. *See* Dkt. No. 33-9 at 117-120 (Plaintiff acknowledges that she was paid differently as a manager so she would get commissions on her own sales, as well as commissions on sales made by staff serving under her; also stating that Mr.

Cloutiere had a pre-existing deal that was different from all other staff). In sum, there is no evidence that Defendant Ashworth structured Plaintiff's budgets in a way that ensured that she would be paid less because of her sex.

Second, Plaintiff raises what amounts to a constructive discharge claim. "An employee is constructively discharged when [her] employer, rather than discharging [her] directly, intentionally creates a work atmosphere so intolerable that [s]he is forced to quit involuntarily." *Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir. 2003) (citations omitted). "Case law generally focuses on two parts of this standard: the employer's intentional conduct and the intolerable level of the work conditions." *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004). As to the first element, if a plaintiff "cannot show specific intent, he or she must at least demonstrate that the employer's actions were 'deliberate' and not merely 'negligen[t] or ineffective[].'" *Id.* (quoting [*Whidbee v. Garzarelli Food Specialties, Inc.*,] 223 F.3d [62,] 74 [(2d Cir. 2000)]). Furthermore, "the standard for constructive discharge [is not] merely whether the employee's working conditions were difficult or unpleasant." *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) (holding that dissatisfaction with assignments, exposure to criticism, and poor compensation failed to support constructive discharge claim).

Plaintiff's claim is significantly undercut by her own admissions during her deposition and her resignation letter. Plaintiff testified that she "felt like I wasn't doing a good job" and that she was receiving threats that she would be fired when new management arrived. *See* Dkt. No. 33-9 at 82:23-84:10. Her letter corroborates her fear that she would be fired based on performance. *See* Dkt. No. 33-2 at 2 (letter stating in pertinent part, "I wasn't living up to your expectations. . . . my fate would be sealed with a new owner as you discussed in a recent sales meeting, so I have decided to just leave now"). Although Plaintiff does make a conclusory

assertion that she resigned because of discrimination, *see* Dkt. No. 33-9 at a 42:10-12, there is no evidence supporting that claim; and, importantly, Plaintiff nowhere alleges that any of Defendant Ashworth's discriminatory actions were intended to cause her to resign.[4] *See Terry*, 336 F.3d at 152 (holding that plaintiff must establish that the constructive discharge occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in a protected class).

Based on this record, Plaintiff has failed to assert facts that plausibly suggest that she suffered an adverse employment action. Therefore, the Court grants Defendants' motion for summary judgment as to her Title VII and NYHRL discrimination claims.

### *2. Hostile work environment*

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). Generally, "incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano*, 294 F.3d at 374 (quoting *Perry*, 115 F.3d at 149). Therefore, in deciding whether a plaintiff has met this burden, the court should "examin[e] the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

---

[4] Rather, there is evidence that Defendants were willing to keep Plaintiff employed as a salesperson and limit her responsibilities as a manager. *See* Dkt. No. 36-3 at 69:22-17.

offensive utterance; and whether it unreasonably interferes with' the victim's [job] performance." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (quotation omitted). Moreover, the "test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano*, 294 F.3d at 374 (quotation omitted). Of course, "[i]t is axiomatic that mistreatment at work, . . . through subjection to a hostile environment . . ., is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic," such as gender. *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (citation omitted).

As recounted earlier, Plaintiff asserts that the evidence of a hostile work environment consists of (1) a running "joke" in the office that there was a 120-pound weight limit for female employees, *see* Dkt. No. 35 at 4; (2) a different dress code for female employees, *see id.*; (3) Defendant Ashworth screaming and cursing at Plaintiff, *see id.* at 5; (4) women being disciplined more severely than men, *see id.* at 6; (5) discriminatory bonus calculations; *see id.* at 7; (6) not being given a company car, *see id.* at 8; (7) being subjected to unwanted comments on her appearance, *see id.* at 5; and (8) having her complaints ignored, *see id.* at 8-9. Although some of these assertions are facially sex-neutral, Plaintiff may rely on them to "establish a course of sex-based discrimination - for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not." *Alfano*, 294 F.3d at 375 (citing *Raniola v. Bratton,* 243 F.3d 610, 622-23 (2d Cir. 2001); *Howley*, 217 F.3d at 155-56).

The Court will address each of Plaintiff's complaints in turn. First, Plaintiff considered the 120-pound weight limit as "lighthearted." *See* Dkt. No. 33-9 at 44:10-12 (referring to the 120-pound weight limit as "lighthearted. We worked in radio… it was very lighthearted,

mentioned"). Plaintiff's admission that she considered this comment lighthearted undermines the subjective element of her hostile work environment claim.

Second, Plaintiff asserts that there was a different dress code for slender female employees. Specifically, Plaintiff alleges that one employee, Nicki Hewitt, was allowed to wear shorts but other women were not. *See* Dkt. No. 35 at 4. Plaintiff also claims that Defendant Ashworth made the comment "some bodies look better in jeans." *See* Dkt. No. 33-9 at 11-14. Plaintiff's deposition testimony is confusing on this point as it appears that she only claims that the dress code was not enforced against Ms. Hewitt on one occasion. In addition, in her affidavit, Ms. Hewitt states that the only dress code was for people to dress in a business causal manner. *See* Dkt. No. 33-5 at ¶ 8.

Third, Plaintiff contends that Defendant Ashworth screamed at her, called her names (such as "lazy"), pressured her to be more aggressive in her managerial style, and told staff they could not date clients. *See generally* Dkt. No. 35. Defendants do not dispute these allegations but, rather, claim that this was the office culture of which Plaintiff was a part. In fact, several of Plaintiff's co-workers stated in their affidavits that Plaintiff had the foulest mouth at the office. *See* Dkt. No. 33-4, "Carruthers Aff." at ¶ 10; Dkt. No. 33-5, "Hewitt Aff." at ¶ 9; Dkt. No. 33-6, "Miner Aff." at ¶ 6; Dkt. No. 33-7, "Cloutier Aff." at ¶ 7; Dkt. No. 33-8, "J. Ashworth Aff." at ¶ 11. Furthermore, Defendants argue that none of these allegations, even if true, are gender-based.

Fourth, Plaintiff alleges that there were two occasions when women and men, having similar issues, were disciplined differently. In this regard, Plaintiff claims that she was not allowed to discipline a male salesperson who was underperforming. *See* Dkt. No. 35 at 6-7. Defendants counter, stating that the male salesperson, Ben, was ultimately fired for poor

performance. *See* Dkt. No. 33-2 at ¶ 23. Further, Plaintiff alleges that there were discrepancies in how a male salesperson, Mr. Cloutiere, was disciplined for similar transgressions as a female salesperson, Ms. Roberta Carruthers. *See* Dkt. No. 35 at 6-7. Defendants again counter, alleging that Mr. Cloutiere's issues were computer-based, and he received counseling and training for his issues. Furthermore, Defendants assert that Ms. Carruthers' issues were more severe; and Ms. Carruthers stated in her affidavit that she did not believe she was treated unfairly. *See* Dkt. No. 33-4, "Carruthers Aff." at ¶ 12.

Fifth, Plaintiff alleges there were discrepancies in how the bonuses were calculated. Defendants argue that Plaintiff was the highest paid member of the staff her last two years with the company. Further, they claim that Plaintiff had a different pay scale because she was the only sales manager at the company. *See* Dkt. No. 33-2 at ¶ 45

Sixth, Plaintiff alleges that she and other female staff were not given company cars. Defendants argue that no new employees received company cars, and the only reason several employees had them was that they were preexisting deals from before Plaintiff joined the company. Further, Plaintiff acknowledges that Defendant Ashworth offered her a company car at one point but that she turned it down because she wanted a Mustang, not a Taurus.

Seventh, Plaintiff claims that Defendant Ashworth once commented on the fact that her hair was wet; and he said, "what did you do, get caught in the rain today." *See* Dkt. No. 35 at 5. Furthermore, Plaintiff alleges that Defendant Ashworth told his staff that they needed to look presentable because "sex sells." *See id*.

Finally, Plaintiff alleges that her complaints were ignored or dismissed. *See id*. at 8-9. Defendants point out that Plaintiff testified at her own deposition that she never actually complained to anyone. *See* Dkt. No. 37 at 7.

"There is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment; rather, [the court] view[s] the circumstances in their totality, examining the nature, severity, and frequency of the conduct." *Alfano*, 294 F.3d at 379 (citations omitted). Taken together, the incidents about which Plaintiff complains were infrequent and episodic; most of them lacked any sexual overtone; and the one that did have a sexual overtone most people, including Plaintiff, considered to be a lighthearted joke. Therefore, the Court finds that Plaintiff's allegations fail plausibly to suggest that Defendants subjected her to a hostile work environment. Although summary judgment is often inappropriate in discrimination cases, this is one of the cases where summary judgment is "'fully appropriate, indeed mandated, [because] the evidence is insufficient to support the non-moving party's case[.]'" *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012) (quotation and other citations omitted). Therefore, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's Title VII and NYHRL hostile work environment claims.

### *3. Title VII retaliation*

Title VII's anti-retaliation provision prohibits an employer from retaliating against an employee for opposing any practice that Title VII makes unlawful. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59–60 (2006). To establish a prima facie case of unlawful retaliation under Title VII, "an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (citations omitted). "Actions are 'materially adverse' if they are 'harmful to the point that they could well dissuade a

reasonable worker from making or supporting a charge of discrimination.'" *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quotation omitted).

"A plaintiff engages in 'protected activity' when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Bundschuh v. Inn on the Lake Hudson Hotels*, LLC, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012) (citations omitted). Furthermore, to qualify as protected activity, an employee's complaint must have been based on "'a good faith, reasonable belief that [she] was opposing an employment practice made unlawful by Title VII.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quotation omitted). "[M]ere subjective good faith belief is insufficient[;] the belief must be reasonable and characterized by *objective* good faith." *Id.* at 16 (quotation omitted). "'The reasonableness of the plaintiff's belief is . . . assessed in light of the totality of the circumstances,'" and "[a] plaintiff's belief on this point is not reasonable simply because . . . she complains of something that appears to be discrimination in some form." *Id.* at 14-15 (quotation omitted).

In this case, the record is bereft of allegations, much less facts, that Plaintiff engaged in protected activity that could give rise to a retaliation claim.[5] For example, at her deposition Plaintiff testified as follows:

> Q. Well did you make a complaint of any kind?
> A. No.
> Q. So you never brought up sex discrimination or anything of that kind to Clay Ashworth, is that correct?

---

[5] The Court recognizes that filing an EEOC charge is a protected activity; however, in her deposition, Plaintiff states that she filed her EEOC charge in March 2014, i.e. six months after she resigned. *See* Dkt. No. 33-9, "Pl. Depo." at 109:19-20. Plaintiff does not allege that any adverse actions took place after she filed her EEOC charge.

> A. I remember telling Clay you can't tell – at Regional Radio Group I didn't make a formal complaint.
> Q. Did you ever have a discussion with Clay about sexual discrimination at the radio station?
> A. I would tell Clay you can't – you shouldn't say that or you can't do that, but he was my boss. I listened to what – he owned the place.
> Q. Did you ever talk to Clay's wife about sexual discrimination at the radio station?
> A. No.

*See* Dkt. No. 33-9 at 87:18-88:14.

Plaintiff further alleges that she brought up her disparate treatment at a meeting where managers discussed her poor performance and gave her an opportunity to focus solely on sales for a period of time due to stresses at home. *See* Dkt. No. 35 at 14 (citing Dkt. No. 36-3 at 9-10 (excerpt of Jane Ashworth Depo)). However, Plaintiff specifically said that she did not make a complaint at that meeting or to Ms. Ainsworth regarding mistreatment on the basis of gender. *See* Dkt. No. 33-9 at 89:6-10. Therefore, because there is nothing in the record to support Plaintiff's claim that she engaged in a protected activity, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's Title VII retaliation claims.

**C.     Family Medical Leave Act**

Plaintiff concedes that the Court should dismiss her FMLA claim if Defendant Regional Radio Group, LLC did not have the required 50 employees. *See* Dkt. No. 35 at 16; *see also* 29 U.S.C. § 2611(4)(A)(i) (defining employer as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year"). Defendant Ashworth swore in his affidavit that Regional Radio Group, LLC never had more than 29 employees during the relevant periods; Plaintiff has not attempted to contradict this statement.

*See* Dkt. No 33-2 at ¶ 44. Therefore, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's FMLA claim.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 33, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: March 15, 2017
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge